CLAMORGAN, *Appellant*, v. THE BADEN & ST. LOUIS RAILWAY COMPANY.

| 72 | 139 |
|----|-----|
| 39a | 445 |
| 72 | 139 |
| 115 | 660 |

1. **Deed**: DESCRIPTION BY REFERENCE TO ANOTHER DEED. It is no objection to a deed that it does not describe the land conveyed, if it refers for description to the book and page of a record where another deed is recorded which does describe it.

2. ———: DESCRIPTION: CALL FOR "THE HILLS" HELD TO PREVAIL OVER CALL FOR DISTANCE. A deed executed in 1810 described the southern boundary of the tract conveyed as "twenty arpens in depth from east to west, that is to say from the river Gingras to the hills." Actual measurement subsequently made showed that the distance from the river to the hills was twenty-five arpens. In 1807 the Board of United States Commissioners had confirmed to the grantor in this deed all the land lying between the river and the land of one S., which lay in the hills. In several conveyances subsequent to 1810 both the grantor and the grantee, under whom respectively the parties to this suit claimed, recognized the southern boundary as it was described in the deed of that date, invariably calling for the hills as the western terminus of the line. *Held*, that although the call for "the hills" might otherwise have been too indefinite, yet, effect must be given to the studied repetition of that call in all the deeds, and it must prevail over the call for twenty arpens. The deed of 1810 was, therefore, construed as conveying all the land between the river and the land of S. in the hills.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*E. P. Johnson* and *G. W. Hall* for appellant.

*J. M. & C. H. Krum* for respondent.

NAPTON, J.—This is an action of ejectment for a small lot of ground on the Bellefontaine road lying within United States survey 728. The case depends upon the construction of two documents, the one purporting to be a cession or relinquishment of all title in the claim of Jacques Clamorgan on the Gingras by Pierre Chouteau and wife, acknowledged and recorded November 8th, 1810, and the other a deed dated June 26th, 1810, whereby Clamor-

gan conveyed to Chouteau 400 arpens in superficies in the same tract above referred to, bounding it on the south by Joseph Hebert, on the north by himself, fronting on the east sixteen arpens running north and south, and on the west twenty-four arpens running north and south, "by a quantity of twenty arpens in depth from east to west, that is to say, from the river Gingras to the hills." In 1793 Clamorgan obtained a concession of 800 arpens of land at the Ruisseau A'Bechame, which empties into the Gingras, describing it as twenty arpens by forty, lying between the river Gingras and the hills. Governor Trudeau had before him a plat of the land furnished by the petitioner, and ordered a survey, which, however, was not made by the surveyor, Mackay, until 1806, two years after the change of government. In 1807 the United States Board of Commissioners confirmed this claim of Clamorgan to 800 arpens of land, "situate as aforesaid, provided so much may be found vacant there; and ordered the same to be surveyed, so as to include his improvements, and so as not to interfere with the surveys of Helen St. Cyr and children, Antoine, Vincent and Bouis, or Jacinto St. Cyr and Narcisse St. Cyr." The survey of Mackay showed that the claim of Clamorgan encroached on the northwest into the St. Cyr confirmation 290 arpens, and on the southwest did not extend to the St. Cyr claims, so that there was a piece of ground on the southwest, by stopping at the end of twenty arpens from the southeast corner, which was apparently vacant. The United States survey made in 1817, by Rector, (numbered 728,) and that of Cozens made by order of the court in the trial of this case, fixed the southwest corner of the Clamorgan tract at a point in the hills on the line of the St. Cyr claim five arpens further west than the Mackay survey, or twenty-five arpens from the southeast corner, instead of twenty. The survey of the land granted by Clamorgan to Chouteau in 1810, followed this Rector survey, and if it was a correct exposition of the deed, the plaintiffs obviously had no claim, as it

embraced the entire south end of the Clamorgan confirmation. The correctness of this survey is the main question in the case.

It is true that if we regard the deed from Chouteau to Clamorgan of November 8th, 1810, as too indefinite to con-

1. DEED: description by reference to another deed. vey any specific tract of land, this question is unimportant. This deed, in the original, reads thus:

Nous soussignes pour valeur recue, cédons, quittons, vendons et transportons à M. Jacques Clamorgan, sans aucune garantie ni recours quelconques, le morceau de terre mentionné et décrit en la vente des autres parts (A) avec tous les droits, titres, actions et prétentions que nous y avons. Signé et scehé ces présentes en la ville et District de St. Louis, ce Six Novembre mil-huit cent dix. Ladite terre énregistree livre B, page 353 et suivante (sur lequel morceau de terre le S. Clamorgan nous a vendu une partie).

PIERRE CHOUTEAU, [SEAL.]

SAUCIER CHOUTEAU. [SEAL.]*

The sheriff's deed to Chouteau, dated July 10th, 1809, conveyed to Chouteau " all the right, title, interest and property which said Jacques Clamorgan had or possessed in and to a certain tract or parcel of land, lying or being on the river Gingras in the same district and bounded by lands of Joseph Hebert, Hyacinthe St. Cyr and Vincent."

The intent of the parties to these conveyances is obvious. Chouteau agreed with Clamorgan that 400 arpens of the land conveyed to him by the sheriff would satisfy

---

*TRANSLATION.—We, the undersigned, for value received, cede, relinquish, sell and transfer M. Jacques Clamorgan, without any warranty or recourse whatever, the tract of land mentioned and described in the sale of the other parts (A), with the right, title, actions and claims which we have and can have on it.

In testimony whereof, we have signed and sealed these presents, in the town and district of St. Louis, this 6th of November, 1810, the said land recorded in book B, page 353, and following, and (of which piece of land the said Clamorgan has sold a part to us).

his judgment, and, therefore, upon Clamorgan's conveying to him 400 arpens he would relinquish all title to what remained of the concession which had been conveyed to him by the sheriff's deed. The confirmation had already been recognized by the United States government, though the only survey then made was that by Mackay in 1806. Chouteau had, at the date of this deed or about that time, conveyed this 400 arpens to Beaufils and Lebeau, and his object was to give back to Clamorgan all the confirmation not embraced in his deeds to Lebeau and Beaufils. The words "cedons, quittons, vendons et transportons," I suppose are as efficient to convey title as the English words "grant, bargain and sell," all warranty being disclaimed. The instrument was signed and sealed, and the only serious objection to it is that there was no sufficient description of the land conveyed. But as the deed refers for this to another instrument duly recorded, and the book and page of the record is stated, this reference would serve to destroy all ambiguity as to the land relinquished.

The title of Clamorgan, then, to all his concessions outside of the 400 arpens conveyed to Chouteau being reinvested in him, the only question is, whether the deed of Clamorgan to Chouteau for the 400 arpens covered the land in controversy

2. ———: description: call for "the hills," held to prevail over call for distance.

which is a strip of ground between the western line of the Mackay survey and the line of boundary between Clamorgan and St. Cyr, as established by Rector and recognized by the United States authorities. It may be conceded that a call for a point in "the hills" is too indefinite, but it is worthy of observation that in all the deeds, though the original southern boundary is described as being twenty arpens long, the words "that is to say, from the Gingras to the hills," are invariably inserted. Clamorgan and Chouteau both adopted this interpretation of the concession. It will be observed that Clamorgan's claim, as confirmed, was bounded on the south by Hebert, and on the west by St. Cyr. This evidently carried it beyond the

twenty arpens, and in this confirmation by the board of commissioners they evidently regarded his claim as bounded on the west by the St. Cyr claim. Chouteau recognized this in his deeds to Lebeau, and also to Beaufils; so, also, did Clamorgan in his deeds to Clark and Carr. It is clear that the board of commissioners also regarded the St. Cyr confirmation or claim as the western boundary of the Clamorgan grant. These confirmations providing "that so much can be found vacant there," that is, between the Gingras and the St. Cyr confirmation, clearly indicates that there should be no vacant land between the western line of Clamorgan, and the eastern line of St. Cyr—that Clamorgan's claim should go to St. Cyr's eastern line, but no further. Under these circumstances, we have concluded, though at first of a different impression, that the call for "the hills" in the deed of Clamorgan to Chouteau must carry the land conveyed to the line of St. Cyr, notwithstanding the line is described as twenty arpens long. This seems to have been the construction given to the deed by the parties to it, and the singular repetition of the phrase "that is to say, to the hills," in all the deeds seems to be an explanation of the previous call for a southern boundary of twenty arpens, and indicative of an intention that whether that extent would go to the hills or not, at all events the hills were to be reached, through which the eastern line of the St. Cyr confirmation extended. This being our conclusion upon a careful examination of the record, the judgment of the court of appeals is affirmed The other judges concur.