H. CLAMORGAN ET AL., Plaintiffs in Error, *v.* D. C.
HORNSBY ET AL., Defendants in Error.

**May 1, 1883.**

CONVEYANCES — DESCRIPTION. — A call in a deed from a certain point "to the
hills," though otherwise too indefinite, must, in view of the studied repe-
tition of that call in all the deeds in the chain of title, prevail over the
call for a given quantity.

ERROR to the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*
E. P. JOHNSON, for the plaintiffs in error.
J. C. & C. H. KRUM, for the defendant in error.

LEWIS, P. J., delivered the opinion of the court.

This proceeding represents a consolidation of twenty-nine
ejectment suits brought by the same plaintiffs against vari-
ous defendants, to recover a part of United States Survey
No. 728, situate near the northern extremity of the present
city of St. Louis. The petitions in all these cases describe the
land sued for as being "all of that portion of the land em-
braced within United States Survey numbered seven hun-
dred and twenty-eight, * * * lying and being west of
the western boundary line of the land deeded to Pierre
Chouteau by Jacques Clamorgan, by deed dated June 26,
1810, and bounded south by the southern line of said sur-
vey, west by the western line of said survey, and east by
the western line of said deed." A patent for United States
Survey No. 728 was issued February 12, 1874, to Jacques
Clamorgan or his legal representatives. The plaintiffs claim
to be the legal representatives of Clamorgan, by devise and
inheritance. The court, sitting as a jury, found for the de-
fendants.

A number of questions are here discussed by counsel on
both sides; but it seems to us that the description in the

petitions narrows down the whole controversy to the proper interpretation of the deed which it includes.   If there is no land within the survey lying west of that conveyed in the deed from Clamorgan to Chouteau, — in other words, if the land conveyed by that deed extended to the western boundary of the survey, — there is no land in existence which the plaintiffs can recover under their petitions.   When the plaintiffs closed their case in the circuit court, they had not introduced the Clamorgan deed in evidence.   There was, therefore, at that point, no identification of any land upon which the court could render a judgment.   It devolved upon the plaintiffs to show that there was some land, in the defendant's possession, lying between Chouteau's acquisition from Clamorgan and the western boundary of the survey.   This it was impossible to do, without exhibiting the deed, so as to show what part of the survey, if a part at all, it covered.   The defendants, however, supplied the omission by putting the deed in evidence, against the plaintiffs' objections, so that it is fairly before us.

The patent recites the patent certificate, No. 291, from which it appears that in pursuance of the several acts of Congress respecting claims to lands, etc., Jacques Clamorgan has been confirmed in his claim to a tract of land containing four hundred and twenty and thirty-nine one-hundreths acres.   It further recites a survey regularly made and certified under the confirmation, bearing date September 4, 1822, and copies the field notes of that survey for a description of the land to be granted in the patent.   From these notes it distinctly appears that the land corners at the southwest with Joseph Hebert, that its southern boundary line coincides with Joseph Hebert's northern boundary, its western boundary line with the eastern boundaries of H. St. Cyr and L. N. St. Cyr, and its northern boundary line with the southern boundary of H. St. Cyr.

The deed from Clamorgan to Chouteau, of June 26, 1810, describes the land conveyed as "a certain piece of land situated in the prairie of Malin Creek, in the district of St.

Louis, which piece of land contains four hundred arpens in superficies, forming a part of a larger tract granted to me by the Spanish government, October 5, 1793, which land is bounded on the south side by the land of Joseph Hebert, on the north by me, the above said vendor, the front of which on the east is sixteen arpens running north and south, and in the rear also, in the same direction, north and south, twenty-four arpens, by a quantity of twenty arpens in depth from east to west, that is to say, from the river Gingras to the hills.''

The testimony of William H. Cozzens, an experienced surveyor, was to the effect that he had surveyed the land granted by the patent, and had also surveyed the Clamorgan-Chouteau tract according to the calls in the deed of June 26, 1810. Following these calls, a width of twenty arpens from the river Gingras westwardly would establish the southwest corner at a point in the south line of survey 728, distant about ten and thirty-two one-hundredths chains eastwardly from the southwest corner of that survey. The west line of the Clamorgan-Chouteau tract would not be parallel with the west line of survey 728, but would intersect and cross it at a point distant from the southwest corner, about two-thirds the length of the line. The lines thus run will enclose a triangle, whose base will be the line of ten and thirty-two one-hundredths chains connecting the two southwest corners of the tracts, respectively, and whose sides will be sections of their respective western boundary lines. Within this triangle are situate the several lots of ground in controversy. Unless, therefore, this be the true method of locating the west line of the Clamorgan-Chouteau tract, the plaintiffs can show no right of recovery.

The testimony of Cozzens, and other proofs, tended further to show that the western terminus of the south line of the Clamorgan-Chouteau tract, thus located, falls short of reaching ''the hills'' by about the distance from that terminus to the southwest corner of survey 728. If, then,

the terminus should be removed to the hills, the west line of the Clamorgan-Chouteau tract would coincide with that of survey 728; the triangle containing the lands in controversy would be included in the deed from Clamorgan to Chouteau, and there would remain nothing for the plaintiffs to recover, as the legal representatives of Clamorgan.

The question thus presented has been determined by our supreme court. The suit of the present plaintiffs against *The Baden and St. Louis Railway Company* was for recovery of a lot situate within the triangle above described, and was founded upon the same claim of title which is here involved. It was held that the call "from the river Gingras to the hills" controlled the call for a width of only twenty arpens, and that Chouteau acquired, under the deed, the entire width to the hills, or, which is the same thing, to the west line of survey 728. *Clamorgan* v. *Baden, etc., Ry. Co.*, 72 Mo. 139.

The plaintiffs call our attention to some differences between the testimony given in this case, and that in the case above cited. We find no such differences as can modify the application of the supreme court's ruling. The opinion of the supreme court refers to the survey of the Clamorgan claim, made by Rector in 1817, showing that the land was bounded on the west by the St. Cyr confirmation which extended along the hills, to the survey made by Mackay in 1806, and that of Cozzens in 1875; to the confirmation by the board of commissioners, and their description of the claim, the sheriff's deed to Chouteau of Clamorgan's interest, in 1809, the deed of Clamorgan to Chouteau, in June, 1810, Clamorgan's deed to Clark and Carr, Chouteau's conveyances to LeBeau and Beaufils, and that made by him to Clamorgan, November 6, 1810. Having carefully considered these features in the testimony, the court concludes that "the call for 'the hills' in the deed from Clamorgan to Chouteau must carry the land conveyed to the line of St. Cyr, notwithstanding the line is described as twenty

arpens long. This seems to have been the construction given to the deed by the parties to it, and the singular repetition of the phrase, 'that is to say, to the hills,' in all the deeds, seems to be an explanation of the previous call for a southern boundary of twenty arpens, and indicative of an intention that, whether that extent would go to the hills, or not, at all events the hills were to be reached, through which the eastern line of the St. Cyr confirmation extended." All these items of evidence were introduced in the present case. It is of no consequence that some of them which were offered by the plaintiffs in the former case were withheld from this, until introduced for the defendants. They appear in the record, and we cannot draw from them a conclusion at variance with that announced by the supreme court. It was conceded that a call for a point in "the hills" might be too indefinite for description, but the court found that it was made sufficiently definite by the other documentary evidence submitted in that case, as it is in this.

Counsel for the plaintiffs undertake to show that all the proceedings anterior to the issuing of the patent were contrary to law, and void, and argue, hence, that the deed from Clamorgan to Chouteau was a nullity, because the grantor had nothing to convey. We are at a loss to understand why this point is urged for the plaintiffs. If it is maintainable, the effect must be that the patent, which recites for its foundation the confirmation and other proceedings, was issued without authority of law, and is therefore void. This destroys the only basis upon which the plaintiffs can pretend to any claim of title. On the other hand, if the antecedent proceedings and the patent are valid, the question, who are the "legal representatives" of Jaques Clamorgan is not to be answered by pointing to the plaintiffs, as his heirs and devises, if, in his lifetime, he created other legal representatives of his right and title, in his grantee Pierre Chouteau, and lawful claimants under him. The judgment is affirmed, with the concurrence of all the judges.